16227

LITTLE v. LITTLE *ET AL.*
(53 S. E. (2d) 884)

*Messrs. J. Arthur Knight,* of Chesterfield, *and John D. Nock,* of Cheraw, for *Appellant,*

*Messrs. James E. Leppard and Wm. P. Gulledge,* of Chesterfield, *for Respondents,*

*Messrs. J. Arthur Knight,* of Chesterfield, *and John D. Nock,* of Cheraw, *for Appellant, in reply,*

June 2, 1949.

STUKES, Justice.

The respondent, Mrs. Lila W. Little, is the mother of the other parties to this action. At the instance of still another son she consulted a tax accountant in December, 1942 who advised her that she might avoid or minimize inheritance taxes by making gifts to her children and the exemption that year was $4,000.00 to each child which he warned would be decreased to $3,000.00 the next year. From this advisor she went to the office of C. P. Laney, an attorney now deceased, and employed and instructed him to prepare several deeds to various of her children, including that in controversy in this litigation, carefully telling him what property to put in each deed. Mr. Laney told her that it would be next day before the deeds could be completed and she returned as told on December 31, 1942, and executed the deeds. She thereupon took them to the Clerk of Court at Chesterfield who recorded them as of that day. That to plaintiff-appel-

lant was dated December 30, 1942, recited consideration of $5.00 and love and affection and conveyed in fee the following:

"All that certain piece, parcel or tract of land in the above state and county, and being a part of the Lila W. Little home plantation, containing fifty (50) acres, more or less, and being bounded as follows: On the North by lands of George T. Little; on the East by the right-of-way of the Atlantic R. R. Co., which Railroad separates said lands from other lands of grantor; on the South by lands of Campbell P. Laney, Jr., and on the West by further side of woods adjoining Laney line as far as woods extend, thence continuing in a Northern direction over cultivated area, parallel to said Railroad to George T. Little line."

Other deeds executed and recorded simultaneously with the above were to other children of the grantor, as follows: To George T. Little, an undivided one-half interest in 235 acres; to J. W. Little, all grantor's right, title and interest in 812 acres (shown by other evidence to be an undivided one-sixth interest); and to Ada Herrmann, an undivided one-half interest in the timber upon two tracts of 35 acres and 20 acres. Shortly thereafter, but in the next tax year, on January 30, 1943, Mrs. Little conveyed to Julian Little, appellant, an additional 50 acres east of the railroad; and on the same date to J. W. Little another and separate tract of 50 acres. Finally (so far as the record shows) on December 9, 1944, she conveyed an additional 42 acres to Julian, the appellant. (These other deeds are not denied.)

He, unmarried, lived at the family homestead with his mother and even slept in the same room, before the conveyance, continuously afterward and until the time of trial. She was a large farmer but decided in the fall of 1942 to discontinue operations and notified her sons who are the other parties to this action that they could take over and operate the home place, from which there was carved the acreage now in dispute. James W. Little declined at that time, be-

ing otherwise engaged in extensive farm operations, so Julian at once took over and operated the entire home place, which contained about 300 arable acres. Mrs. Little gave him livestock and farm equipment, including tractors and other implements. He paid no rent and annually paid the taxes which, however, were assessed in her name, as before. He also repaired the buildings. This arrangement continued until 1947 when appellant's brother, James W., decided to farm half of the home place and a difference immediately arose between him and appellant as to the location of the boundary between appellant's acreage described in the questioned deed, on the west or southwest, and other lands of Mrs. Little.

Appellant then employed an engineer to survey and plat the land described in the deed, description copied above. When notified of this Mrs. Little sought out the surveyor on the land and told him to disregard the deed description with reference to the disputed line and run the latter in accord with her direction, which resulted in an acreage of 40.5. Appellant was dissatisfied with this and had the engineer survey the line and prepare a plat in accord with the description in the deed and this resulted in 70.9 acres which the engineer certified on the plat to be, "Map of land prepared for Julian Little. Content 70.9 acres. Situate in Chesterfield County, S. C., located by deed recorded in Chesterfield Court House * * *." After the survey appellant returned the land separately for taxes in his name.

Action was brought on March 23, 1948, by Julian Little as plaintiff against his brother, James W. Little, defendant, upon a complaint in which it was alleged that plaintiff is the owner and in possession of the land described in the deed and the plat above mentioned; that defendant has trespassed upon the property by cultivating it to plaintiff's damage in the sum of $1,000.00 and the trespass continues. Prayer was for the stated amount and for injunction against further trespasses. The mother of the original parties to the

action was thereafter made a defendant, answered by general denial and also affirmatively, that the deed under which appellant claims was never delivered but was made in contemplation of partial distribution of her lands in 1942 for tax purposes and she delivered the deed for record without knowledge of the resultant presumption of delivery, without the knowledge of appellant and without intent to effect delivery; that she decided against the distribution of the property and never delivered the deed which has been in her possession and control and she retained exclusive possession of the premises and appellant has been her tenant; that the deed is invalid and constitutes a cloud upon her title and a court of equity should decree cancellation, for which she prayed judgment.

The decree of the trial judge contains the following recital, from which there was no appeal: "This case was upon the roster for trial by jury, but upon examination of the pleadings I brought to the attention of counsel that the issues raised by the answer of Lila W. Little, wherein she seeks equitable relief, should first be tried; and by agreement of counsel for the respective parties the same were submitted to me for trial without a jury, the testimony being then taken before me, and counsel duly heard in argument."

This can only mean that the case was treated by all concerned as one in equity with the result that this court has jurisdiction to review the findings of fact which will be determined on appeal in accord with our view of the preponderance or greater weight of the evidence. Art. V, Sec. 4, Constitution of 1895; *Bates v. Bates,* 213 S. C. 26, 48 S. E. (2d) 612.

Appellant and his mother testified at length and there are naturally some contradictions in their testimonies but it may be said to the credit of both of them that there are no sharp conflicts and no name-callings so the litigation promises not to rupture their close relation, closer even than

the ordinary mother and son relationship. She testified that the day after her execution of the deed and when it was yet in the hands of the recording officer, she decided that the western or southwestern boundary fixed in the deed would cause "trouble" and for that reason the deed should not become effective. However, she said and did nothing about it during a period of over five years except, she says, to retain possession of the deed after it came from the recording office and withhold delivery of it. However, she and the grantee (mother and son) were living in the same house and there is no satisfactory evidence that the deed was kept in hiding or locked away from him and the evidence preponderates that he had possession of it at times. Before it came to her after recording she told him of its execution and that it contained something that he had always wanted, referring to the particular land. She admitted that she later allowed him to read it for his information, telling him where it was in the house so he could get it for himself.

When Mrs. Little talked to the engineer when the latter went to survey the land, she pointed out the narrower boundary and expressed her willingness that appellant should have the smaller acreage. It is plainly inferable from this incident and conversation that she was attempting to make peace between her contending sons, her donees, and upon failure in that she later took the side of her other son and against appellant. There is an important inconsistency between denial of the force of the deed for failure of delivery and agreement that it should be effective to the extent of a lesser acreage than that described in the deed. There is no question of any lack of capacity on the part of Mrs. Little or any imposition upon her. There is no indication in her testimony of any deterioration of her mental faculties and no contention of her counsel thereabout. On the contrary, the record indicates that she is a woman of unusual business acumen, experience and success. Her age is now sixty-six years.

"Q. Mrs. Little, as I understand, you are perfectly willing for this deed to be effective as to about forty acres where you had this line run? A. I offered it to Julian Little but he did not accept it.

"Q. And you are willing for the deed to stand good as to that much land as shown on the survey that Mr. Thrower made for you? A. Well now, I would have to think about that some because I offered it to him and said, 'Jule, if I have to fight I don't know that I will make you another deed for it, I won't promise that I will,' and I have not decided yet as to whether I will make another deed for it. That is still to be decided.

"Q. But the time you made him the proposition you were willing for your deed to stand as to the forty acres? If he would deed you back—A. No, I won't recognize that deed that I told you I was not satisfied with. I would have had a new deed made for him.

Q. He had already had the deed recorded, he would not have need of a new deed? A. Well, I rather think he would under the circumstances."

Julian's version of this incident was as follows:

"Q. And your mother told you that she was willing for you to have or she would give you a deed to that forty and five-tenths acres? A. She said she would fix up a paper you (her attorney) would fix up the paper and if I would sign it I could have that part.

"Q. And you did not agree to that? A. No."

The surveyor's tangent testimony is also quoted:

"A. Mr. Little called me and told me he wanted a survey of this land and said he did not have the deed, for me to get it off of the record at Chesterfield which I did, and I went out to make the survey and notified Mrs. Little that I was making it, and she was not at the house but came on out after we started working, and she said that she did not want to run it by that deed or description, and I said, 'Well,

Mrs. Little, Julian expects me to run it by his description recorded in Chesterfield,' and she said, 'Well, the deed has not been given to him,' and she is going to take that off the record at Chesterfield, and she wanted me to run it like she wanted it divided, which I did.

"Q. Did she say anything about if Julian was not satisfied with that? A. Well, she said that, I says, 'Now I am out here doing this work for Julian and I don't know whether he would be satisfied or not,' and said, 'Well, go ahead and run it like this,' and said she is taking the other deed off record and that she will pay me for the work, if he is not satisfied, he won't get anything.

"Q. That Jule won't get anything? A. Yes."

The single question involved before us is, "Was the deed delivered?" The recording of a deed raises a presumption of delivery, even when the recording is procured by the grantor. "The delivery of a deed for record, by one who has executed and acknowledged it, with unqualified instructions to record it, will raise the presumption in the absence of any rebutting circumstance that the grantor intends to part with his title." 26 C. J. S., Deeds, § 187, page 600. The presumption of delivery which arises from recording is established by the decisions of this court. Among them are: *Ingram v. Porter,* 4 McCord 198; *Dawson v. Dawson,* Rice Eq. 243; *McDaniel v. Anderson,* 19 S. C. 211. There is a valuable compilation of these and other authorities in the approved circuit order which was published with the opinion in *Godfrey v. Godfrey,* 182 S. C. 117, 188 S. E. 653.

Permission by the grantor of possession and use of the land and payment of taxes by the grantee, as in this case, are also circumstances of weight in aid of the conclusion that execution and recordation of the deed were intended to vest the title in the grantee in accord with the purport of the deed. Under all of the authorities "delivery," as applied to a deed, means not so much a manual

act but the intention of the maker. "Delivery is a question of intent." 12 South Eastern Digest, Deeds, Par. 56(2), page 155 *et seq.* The intent referred to is, of course, that existing at the time of the transaction not subsequently and not subject to later change of mind.

The present case has a unique feature in the fact that it was Mrs. Little's object to avoid inheritance taxes and take advantage of the gift tax exemption by making this and the other deeds to her children. Invalid deeds would not have accomplished that purpose; they could not be "Indian" gifts and subject to repudiation; she could not "eat her cake and have it too." On the contrary, the plan implied validity of the deeds and, therefore, legal delivery of all of them, including this one in question. Consideration of all of the facts in evidence is convincing that she would renege now in the case of this deed only because of the dissatisfaction between her sons which arose about five years after the 1942 gifts were made. It is too late for her now, under all of the circumstances of this case, to credibly claim nondelivery of the deed.

Generally sustaining the conclusion which has been reached are the following cases in addition to those hereinabove cited: *Williams v. Sullivan,* 10 Rich. Eq. 217; *Larisey v. Larisey,* 93 S. C. 450, 77 S. E. 129; *Merck v. Merck,* 95 S. C. 328, 78 S. E. 1027; *Watson v. Cox,* 117 S. C. 24, 108 S. E. 168.

The decisions relied upon by the trial court have been carefully examined and we think that our conclusion upon the facts of this case conflicts with none of them. No useful purpose would be served by extending our opinion in order to discuss and differentiate them.

The judgment is reversed and the case remanded for any further, proper proceedings consistent with the view herein expressed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.