16725

PHILLIPS v. DuBOSE

(75 S. E. (2d) 56)

*Messrs. James P. Mozingo III* and *John L. Nettles,* of Darlington, and *Shuler & Harrell,* of Kingstree, *for Appellant,*

*Mr. R. R. Whitlock,* of Lake City, *for Respondent,*

March 9, 1953.

STUKES, Justice.

Appellant brought this action against M. D. DuBose, who is named as sole respondent, upon a complaint in which she alleged that she was the owner and in possession of a tract of land containing 130 acres, more or less, upon which DuBose had trespassed by the cutting of timber of the value of $750.00, and she demanded judgment in the sum of $2,-500.00 and temporary and permanent injunctions against further cutting and removal. DuBose answered and denied trespass upon appellant's land and alleged ownership and possession by himself and his predecessors in title of the land upon which the timber was cut, which adjoins appellant's land; and he denied ownership or possession by appellant of the land in controversy, which the evidence disclosed is about 11 acres lying on both sides of a large canal. During the pendency of the action DuBose conveyed the land adjoining appellant's land, including the parcel in dispute, to W. M. DuRant who does not appear to have been formally brought in as a defendant in the action but the record indicates that he was so considered by the parties, whereby the judgment under review is applicable to his title to the land.

The case is one at law, in which the jurisdiction of this court is confined to the correction of errors of law, not fact. Appellant mistakenly contends that we may review the factual findings, for which there is cited *Little v. Little,* 215 S. C. 52, 53 S. E. (2d) 884. Reference to that case, however, shows that it is inapplicable; court and counsel there expressly agreed that equitable issues were presented and they were tried as such by the court. Here the legal issues of title and possession of land were tried by a referee by consent (which was a waiver of trial by jury) and his findings were adopted by the court as its judgment,

which limits our factual review on appeal to a determination of whether there was any evidence to sustain it. *Peeples v. Cummings,* 45 S. C. 107, 22 S. E. 730; *Gregory v. Cohen & Sons,* 50 S. C. 502, 27 S. E. 920; *Gunter v. Fallow,* 78 S. C. 457, 59 S. E. 70; *Little v. Southern Cotton Oil Co.,* both opinions, 156 S. C. 480, 153 S. E. 462; *Riley v. Berry,* 189 S. C. 4, 199 S. E. 866. However, consideration of the evidence for the purpose of our presently limited jurisdiction has led to the conclusion that the judgment of the trial court is well supported by the facts, which exceeds the requirement for affirmance.

The evidence developed that appellant is the owner of two adjoining tracts which she acquired by deed from L. R. Truluck dated November 2, 1929, described as containing 82½ acres bounded on the north by the other tract conveyed by the deed and on the east by lands of John Floyd, who was respondent's predecessor in title; and 20 acres, more or less, bounded on the east by lands of John Floyd and of the estate of McClam, and on the south by the 82½-acre tract. The 20 acres is known as the Fulmore tract and was acquired in 1923 by appellant's grantor by deed of Josiah Fulmore and was described as bounded on the south by land of L. R. Truluck (appellant's grantor) and John Floyd (respondent's predecessor in title). No plat of the 20-acre tract is referred to in the conveyances which were placed in evidence. Appellant's grantor obtained title to the 82½-acre tract by deed of W. H. Dennis, dated October 16, 1919, in which it is described as being bounded on the north by lands of Fulmore (quite plainly referring to appellant's 20-acre tract) and on the east by lands of Floyd, which is respondent's tract. Incorporated in the description by express reference is a plat by E. J. Smith, surveyor, dated April 18, 1912. This apparently unrecorded plat is of important significance in the controversy although it was not introduced in evidence. When appellant was asked about it on cross-examination she said that she thought one of her attorneys had it; again she said, "Well, I don't have a plat."

Turning to the deeds in respondent's chain of title, in all of the several successive conveyances dating back to 1931 the acreage is stated as 38 1/3, more or less, without reference to any plat; and in all of them the northern boundary is referred to as the Fulmore land (which is appellant's 20-acre tract) and west as appellant's land (her 82½ acres). This is of significance because under appellant's contention the respondent's land would have (under the great weight of the evidence) to be bounded on the north (or really northwest) by respondent's tract of 82½ acres, whereas the deeds in evidence in respondent's chain of title show the northern (or northwestern) boundary to be appellant's Fulmore 20-acre tract. It is evident that the latter tract is long and narrow from east to west and constitutes, by the deed descriptions, the northern (or northwestern) boundary of both appellant's 82½-acre tract and respondent's tract.

After commencement of the action respondent employed a surveyor, W. J. Green, to survey his tract of land and the resulting plat, dated February 11, 1946, shows 46.4 acres, which includes the land in dispute, and the northern (or northwestern) boundary as appellant's Fulmore tract and the western boundary as appellant's 82½-acre tract. The certificate on the plat recites that data was taken from previous surveys by M. A. Thomas, E. J. Smith and P. G. Gourdin. The testimony of the surveyor is clear and convincing. He had on the ground with him a tracing of the E. J. Smith survey of appellant's 82½-acre tract which he followed and found the marks which were called by Smith. He found no evidence of the line contended for by appellant. Previously, in 1944, he was employed by appellant or her husband to locate and survey her boundaries; her husband accompanied him on the survey and showed him some of the lines, and he dined with them on the day of the survey. He testified, in effect, that he located the boundary now in dispute but, quoting from his testimony, "not where they (the Phillips') wanted it." He then had possession of the Smith plat which he said he kept in his office for a year.

It is clearly inferable from all of the evidence that this controversy stemmed from the fact that about 1920 a canal was cut by a Drainage District across the northern tip of respondent's elongated (north and south) tract whereby a small wooded area was effectively separated from the remainder and particularly from that portion which was cultivated, which was the southern part of the tract. The canal was about 10 feet deep and as wide, which prevented ordinary passage and left more or less neglected by the successive owners and tenants the comparatively small timbered area to the northwest of the canal, which was part of respondent's tract. For the purpose of this Drainage District a map of the lands of which it was composed was compiled by Mr. P. G. Gourdin in 1920 and on this compilation, upon which appellant here relied, he showed the line (sketched rather than surveyed) between her larger tract and respondent's tract at least about as contended for by appellant, but no marks or monuments are shown and no courses and distances, which makes it of little value and really none in this case in view of a recorded composite map by Mr. Gourdin which was made in 1944, introduced in evidence by respondent, which contains plat of a complete survey, with marked corners, courses and distances, of appellant's 82½-acre tract, the eastern line of which substantially coincides with respondent's western line which is shown on the plat made by his surveyor, Green, in 1946, which it will be remembered the latter testified was located with the aid of the data of the E. J. Smith survey and plat of appellant's tract in 1912. Moreover this surveyor, Mr. Green, testified that he was with Mr. Gourdin when the survey for the latter's 1944 map was made. Thus in agreement on the line (which accords with respondent's contention) are Surveyors Smith, Gourdin and Green. Under these circumstances, there can hardly be doubt of the accuracy of the location of it.

Appellant had a partial survey made in 1946, for the purpose of the action, but the resulting plat in evidence is only of the area in dispute and the surveyor (who did not testify) discounted whatever value it may have had to appellant by

certifying that he relied upon the Drainage District map, which we have seen was not from an actual survey, but was a compilation or sketch without marks, courses or distances. The certificate on the plat also recites that, quoting, "In establishing the lines we were guided by plat of the Dennis tract by E. R. Smith * * *." This must be the elusive E. J. Smith plat of 1912, which appellant testified she thought was in the possession of one of her attorneys, but it was not produced or offered in evidence. This plat from survey in 1946, offered in evidence by appellant as part of her proof, shows as the western line of the disputed area the line shown on the Green plat of 1946 as the western boundary of respondent's land at that location; and the northwestern point or corner is shown to be a pine stump, "old corner", and an old buggy axle. This same corner appears on the Green plat to be marked by an old stake. The southeast corner of this line likewise appears to be the same as that shown on respondent's Green plat. The only reasonable explanation of the existence of the old marked line, which appears on the 1946 plats of both appellant and respondent, is that it was the eastern boundary of appellant's $82\frac{1}{2}$-acre tract at that location, and the western boundary of respondent. A former plat was also relied upon (according to the certificate of appellant's surveyor) for the Fulmore tract, the boundaries of which have little or nothing to do with the present controversy, except that they lie north of the disputed area and contain the field, to her cultivation of which appellant testified. Then she was contradicted with respect to the location of the Fulmore tract and the field by the very plat which she procured to be made for the purpose of the action; and, even more important, with respect to the location of the eastern line of her Dennis, $82\frac{1}{2}$-acre tract.

Appellant's plat of the disputed area, referred to in the foregoing paragraph, was by L. H. McCollough, Registered Engineer-Surveyor of Aiken, and was dated February 14, 1946, from survey on February 11 and 12, 1946. Respondent's plat of his entire tract, by Surveyor Green, recites in the certificate that the land was surveyed by him on Febru-

ary 11, 1946. Coincidence of the dates is seen. Respondent testified to a former boundary dispute in 1944 or 1945, which appears to have been in reference to the location of appellant's Fulmore tract lying to the north of the land involved in this action. He told of cutting barn wood on the land in dispute, which appellant forbade him from moving. Mr. Green was employed at that time by appellant, ran the line and told respondent that the wood was his and he thereupon removed it without further objection. He also testified to the employment by appellant of another surveyor, Mr. Brown of Hemingway, who surveyed and located the 20-acre Fulmore tract. The following is from his testimony and shows that Surveyors McCollough and Green were on the property at the same time (February 11, 1946, according to the certificates on the plats, *supra*) for the purpose of making the surveys which resulted in their respective plats in evidence:

"A. Yes, sir. She (appellant) will claim she comes down in here. The day they picked, the surveyor Mr. McCullough was a little late with Mr. Green, and he came down here to this corner, just across the canal and he said that he could run it, if she could prove it to be a line, if she had it under pasture.

"Q. Was she present? A. Yes, sir (continuing) for as much as ten (10) years that she could hold it under some kind of possession, that he could run it but she would have to put up the proof so they broke ground and found it."

The following is taken from the reply testimony of the appellant:

"Q. How much will it contain with the disputed area in it, Mrs. Phillips, do you know? A. I don't know.

"Q. You have never had it surveyed to find out the exact acreage in that portion of it, have you? A. Well, now, Mr. McCollough surveyed the portion that Mr. Green had surveyed off for Mr. DuBose.

"Q. I am talking about the entire Will Fulmore tract? A. No, sir, I have not."

There was effort by appellant to establish title to the portion of the disputed area north of the canal by adverse possession. There was no constructive possession of it by her by reason of the result of the foregoing analysis of the deeds and plats. Some time after she acquired and moved on the land in 1929 she erected a barbed wire fence, partly at least by attaching the wire to trees, which she said enclosed a part of the area in dispute for pasturage, which began and terminated at separate points on the north side of the canal, the latter serving also as a cattle barrier, whereby a triangular enclosure of sort was completed; it was not contended that it followed any land lines. However, according to appellant's own testimony, the fence was only maintained while she lived on her tract and she moved away in 1935 or 1936. The other evidence of actual possession by her was, as said by the referee in his report, "inconclusive", and did not extend for the 10 or 20 year periods required by the statutes.

Appellant urges in argument that the deeds in respondent's chain of title consistently referred to 38 1/3 acres, more or less, whereas the survey and plat made after action brought show 46.4 acres; but acreage is ordinarily of little or no importance in the location of boundaries of land, and nothing appears to take this case out of the general rule. *Klapman v. Hook,* 206 S. C. 51, 32 S. E. (2d) 882, and cases cited. Appellant is in poor position to make this point because the recited acreages in the deeds in her chain of title are 82½ and 20, of which there were old surveys and plats according to the evidence although none was offered at the trial, making a total of 102½ acres; yet she claims in her complaint 130 acres, more or less. It is inferable that a survey of her lands, which she did not procure for the purpose of the litigation, would show some such increased acreage if she should prevail in her present contention.

The exceptions to the judgment under appeal relate only to the findings of fact and from the foregoing discussion it is seen that they are without merit and

must be overruled. The brief of appellant goes further and presents questions of law relating to the distinctions between actions of trespass *quare clausum fregit* and trespass to try title, see *Beaufort Land & Investment Co. v. New River Lumber Co.,* 86 S. C. 358, 68 S. E. 637, 30 L. R. A., N. S., 243, and *Battle v. DeVane,* 140 S. C. 305, 138 S. E. 821, which were not passed upon by the trial court or raised by the exceptions and, therefore, will not be considered by this court. The case made by the pleadings and tried in the lower court is concisely stated in the "Statement" contained in the agreed transcript of record for appeal, by which the parties are bound, as follows: "The plaintiff and defendant owned adjoining tracts of land, and the plaintiff alleged that the defendant had crossed the line and cut certain pine trees on her premises. The defendant in his answer claimed that the land belongged to him and that he had the right to cut the trees." It may be added that it appears that no right of the appellant was overlooked or lost by the form of the pleadings and the resulting issues which were tried; and further that the judgment in favor of the respondent was just and correct.

Affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.