529 S.E.2d 754

**Ronnie W. DONNAN, III, Personal Representative
of the Estate of Jean P. Owens, Respondent,**

v.

**Frances O. MARINER and Sandra Parker, Appellants.**

**No. 3144.**

Court of Appeals of South Carolina.

Heard March 9, 2000.

Decided April 3, 2000.

Adam Fisher, Jr., of The Fisher Law Firm, of Greenville, for appellants.

Bradley A. Norton, of Fedder, Cain & Norton, of Seneca, for respondent.

GOOLSBY, Judge:

Jean P. Owens [1] brought this action seeking to invalidate a deed that transferred two properties from her late husband, Samuel R. Owens, to his daughters, Frances O. Mariner and Sandra Parker. The matter was referred to the special referee with direct appeal to the South Carolina Supreme Court. The referee held the conveyance was void due to lack of delivery of the deed. He also found a resulting trust arose over one of the disputed properties in favor of the beneficiaries of Jean's estate. Mariner and Parker appeal. We affirm.

## FACTS

Samuel and Jean were married in 1970. Both were previously married and had children from their prior marriages. They lived in Walhalla in a house Jean and her first husband had purchased together (Walhalla house). After her first husband's death, Jean paid off the remaining mortgage on the home prior to marrying Samuel. During the course of their marriage, Samuel and Jean jointly purchased a house on Lake Cheohee (Lake property).

On November 17, 1983, in an effort to receive a tax break, Jean conveyed to Samuel a one-half interest in the Walhalla house. That same day, Samuel executed a will leaving his interest in the Walhalla house to Jean's children if Jean predeceased him.

On July 20, 1994, Samuel executed a deed purportedly conveying his interest in the Walhalla house and Lake property to his daughters, Mariner and Parker, reserving a life estate in the properties for himself. Samuel instructed the attorney who prepared the deed that he did not want Jean to

---

1. Jean Owens passed away after initiating this action. Ronnie W. Donnan, III, as personal representative of her estate, was substituted as the plaintiff.

know about the transfer. The attorney mailed the deed to Mariner, with instructions to record the deed after Samuel's death. The same day he executed the deed, Samuel executed a new will devising his estate to Jean. The will provided that his estate be equally divided between his and Jean's children should Jean predecease him.

Samuel passed away on May 31, 1995. Mariner recorded the deed shortly after his death. Jean subsequently brought this action to determine the validity of the deed.

## STANDARD OF REVIEW

■ Before addressing the substantive issues on appeal, we must first define the appropriate standard of review. Determination of the proper standard of review turns on whether the case is legal or equitable.[2]

■ At trial, Donnan argued, and the master agreed, that the deed was void for lack of delivery. An action to set aside a deed for lack of delivery is an action at law.[3] Accordingly,

---

2. *Dean v. Kilgore,* 313 S.C. 257, 437 S.E.2d 154 (Ct.App.1993).

3. *Godfrey v. Godfrey,* 182 S.C. 117, 188 S.E. 653 (1936) (noting action to cancel deed involved legal and equitable issues and holding question of delivery of a deed is a jury question); *Patterson v. Causey,* 119 S.C. 12, 111 S.E. 725 (1922) (question of delivery of a deed is for a jury); *Johnson v. Johnson,* 44 S.C. 364, 370, 22 S.E. 419, 423 (1895) ("Before proceeding any further, it may not be amiss to settle the question as to whether, under the pleadings here, so far as title to this land is concerned, there is raised a legal or an equitable issue, for, if it is a legal issue as to the title, primarily, it is triable, under our laws, by a jury.... In the case at bar, title to land is alleged on the one hand and denied on the other; thus raising a legal issue."); *Shaw v. Cunningham,* 16 S.C. 631 (1882) (issue of effective delivery of a deed is for the jury). To the extent *Little v. Little,* 215 S.C. 52, 53 S.E.2d 884 (1949), can be construed that an action to set aside a deed for lack of delivery is a matter in equity, we distinguish *Little.* In *Little,* the trial court found the case to be one in equity. This ruling was not appealed, and the parties proceeded to try the case as one in equity. The supreme court noted that where the parties treated the case as one in equity, the supreme court was free to find the facts in accordance with its own view of the preponderance of the evidence. *See also Phillips v. Du Bose,* 223 S.C. 224, 75 S.E.2d 56 (1953) (distinguishing *Little* and noting that issues of title and possession are legal issues to which an appellate court's scope of review is limited to corrections of errors at law).

we are limited in our review to corrections of errors of law and a determination of whether or not there is any evidence to support the trial judge's findings.[4]

Donnan also sought avoidance or cancellation of the deed on several additional grounds. Donnan first argued that the trial judge should impose a constructive or resulting trust for the benefit of Jean's estate. Donnan also argued that the deed was procured through undue influence.[5] It is clear that both of these causes of action are in equity.[6] As such, we may determine the facts in accordance with our own view of the preponderance of the evidence.[7] We, however, will not disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility.[8]

## DISCUSSION

1. Delivery of the deed

Mariner and Parker argue the referee erred in finding no effective delivery of the deed. We disagree.

---

4. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976) ("In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings.").

5. The master found that the deed was not procured through undue influence. Donnan does not appeal this ruling.

6. *Hayne Federal Credit Union v. Bailey*, 327 S.C. 242, 489 S.E.2d 472 (1997) (stating resulting trust imposed by equity); *Lollis v. Lollis*, 291 S.C. 525, 354 S.E.2d 559 (1987) (an action to declare a constructive trust is in equity); *Atkinson v. Belser*, 273 S.C. 296, 255 S.E.2d 852 (1979) (action to set aside conveyances alleging fraud, undue influence, and inadequate consideration reviewed as action in equity); *Vereen v. Bell*, 256 S.C. 249, 182 S.E.2d 296 (1971) (action to rescind and cancel a deed on the ground of mental incapacity of grantor is equitable).

7. *Townes*, 266 S.C. 81, 221 S.E.2d 773.

8. *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 391 S.E.2d 538 (1989); *Georgia R.R. Bank and Trust Co. v. Doolittle*, 272 S.C. 249, 252 S.E.2d 556 (1979).

A deed is not legally effective until it has been delivered.[9] While there is no prescribed method for an effective delivery of a deed, manual transfer of the instrument into the hand of the grantee is neither required to effectuate a valid delivery, nor dispositive of the issue.[10] The term delivery in this regard refers to "not so much a manual act but the intention of the maker . . . existing at the time of the transaction . . . and not subject to later change of mind."[11] "Delivery of a deed includes, not only an act by which the grantor evinces a purpose to part with the control of the instrument, but a concurring intent thereby to vest the title in the grantee."[12] "The controlling question of delivery in all cases is one of intention."[13]

The trial judge found Samuel's actions contradicted any intent to transfer the properties. Although Samuel sent the deed to Mariner, he instructed her that the deed was not to be recorded until after his death. Mariner was instructed not to tell Jean or her sister about the deed. Despite the alleged transfer of the property, Samuel continued to exercise control over the lake property inconsistent with the life estate he retained in the property. Three months after executing a deed, Samuel and Jean conveyed a portion of the lake property, in fee simple, to a neighbor in order to settle a property line dispute. Moreover, Bobby Long, the Owens' next-door neighbor testified that Samuel often talked about selling the lake property to Long, even after Samuel allegedly transferred the property to his daughters, and had even gone so far as to state a price for the property.

We find ample evidence to support the trial judge's finding that Samuel did not intend to part with control of the proper-

---

9. *Johnson,* 44 S.C. 364, 22 S.E. 419; *Durham v. Blackard,* 313 S.C. 432, 438 S.E.2d 259 (Ct.App.1993).

10. *May v. Jeter,* 245 S.C. 529, 141 S.E.2d 655 (1965).

11. *Little,* 215 S.C. at 60–61, 53 S.E.2d at 888.

12. *Powers v. Rawles,* 119 S.C. 134, 153–54, 112 S.E. 78, 85 (1922).

13. *Alexander v. Kerhulas,* 151 S.C. 354, 358, 149 S.E. 12, 13 (1929) (citation omitted).

ties during his lifetime. Because Samuel did not effectively deliver the deed prior to his death, it is invalid.[14]

### 2. Resulting trust

 Mariner and Parker next argue the referee erred in finding a resulting trust arose in favor of Jean's estate as to the Walhalla house. We disagree.

 A resulting trust arises to effectuate the intent of the parties in certain situations where one party pays for property, in whole or in part, that for a different reason is titled in the name of another.[15] Generally, when real estate is conveyed to one person and the consideration paid by another, it is presumed that the party who pays the purchase money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf.[16] The presumption may be rebutted and the actual intention shown by parol evidence.[17]

 In contrast, when the conveyance is given to a spouse or child, or to any other person for whom the purchaser is under legal obligation to provide, the presumption is that the purchase was designated as a gift or advancement to the person to whom the conveyance is made.[18] This presumption, however, may be rebutted by parol evidence or circumstances showing a contrary intention.[19]

Jean and her first husband purchased the Walhalla house together. The mortgage on the house was satisfied by insurance proceeds Jean received upon his death. For several years Jean refused Samuel's requests that she give him an interest in the house. She reluctantly transferred a half-interest in the Walhalla house to Samuel in order to qualify

---

**14.** *See First Union Nat'l Bank of South Carolina v. Shealy,* 325 S.C. 351, 479 S.E.2d 846 (Ct.App.1996) (stating a deed must transfer its interest during the lifetime of the grantor).

**15.** *Hayne,* 327 S.C. 242, 489 S.E.2d 472.

**16.** *Id.*

**17.** *Id.*

**18.** *Lollis,* 291 S.C. 525, 354 S.E.2d 559.

**19.** *Hayne,* 327 S.C. 242, 489 S.E.2d 472.

for a tax exemption. Jean, however, did not want Samuel's daughters to inherit the house. Samuel agreed that his daughters would not share in the house. Jean stated the only reason she consented to the transfer was because Samuel executed a will that devised the house to her, or if she predeceased him, to her children.

We find the evidence sufficient to rebut the presumption that Jean intended to make a gift of the Walhalla house to Samuel.

**AFFIRMED.**

CONNOR and HOWARD, JJ., concur.