THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING   EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Tony J. Ashy, Appellant,
v.
ACHI Investments, LLC and Ramon J. Ashy, Jr., Respondents.
 
 
 

Appeal From Anderson County
 Ellis B. Drew, Jr., Master-in-Equity

Unpublished Opinion No. 2005-UP-304
Submitted April 1, 2005  Filed May 5, 2005

AFFIRMED

 
 
 
Bernie W. Ellis, of Greenville, Robert L. Widener, of Columbia and Robert P. Lusk, of Anderson, for Appellant.
David Lloyd Thomas, of Greenville and Michael F. Mullinax, of Anderson, for Respondents.
 
 
 

PER CURIAM:  Tony J. Ashy appeals a master-in-equitys decision upholding the validity of a deed from Tony to ACHI Investments, LLC.  We affirm.[1]
FACTS
This appeal concerns the validity of a general warranty deed dated August 23, 2000, whereby Tony conveyed a 2.661-acre parcel of land to ACHI Investments for the stated sum of $75,000.00.  The deed was recorded in the Office of the Clerk of Court for Anderson County on August 31, 2000.  ACHI is a limited liability company owned by Tonys nephew, Ramon J. Ashy, Jr., and his brother (Ramons father).      
In early 2000, Tony discussed selling his 2.661-acre parcel in Anderson County with Ramon.  At that time, according to Ramon, Tony wanted $50,000.00 for the property.    
Additional negotiations occurred on August 22, 2000, when Tony, Ramon, and Ramons father met for lunch in Greenville.  Tony told Ramon he would take no less than $75,000.00 for the property because thats what [he] owe[d] on it.  Tony testified he then phoned his wife, who told him he ha[d] too much money tied up in that property to sell it.  After the parties finished their lunch, Ramon let Tony borrow his car because Tonys vehicle was being repaired.    
The next afternoon, according to Tony, Ramon called and asked him to bring the car to his office.  Once at the office, Ramon asked Tony to sign a payoff request from the bank because the bank would not tell [him] how much [Tony] owe[d] on that property without [his] signature.  Tony willingly signed the document, and Ramon faxed it to the bank.  Instead of driving Tony back to his mothers house, as Tony expected him to, Ramon stopped at the Pfeiffer and Gantt law firm in Greenville, where Tony signed several other documents.    
In contrast, Ramon testified Tony knew they were going to the law firm and had scheduled an appointment for that day with the hopes of completing the closing while Tony was still in Greenville.  The law firm had already ordered appraisals and title searches the day before when Tony and Ramon had discussed the sales price of the property.  While at the law firm, Tony signed several documents:  a Form 1099-S recognition, a sellers indemnity affidavit, and a general warranty deed.  David Gantt, a closing attorney and a partner in the law firm of Pfeiffer and Gantt, and Tilda Burgess, a paralegal, witnessed the deed.  There never was a separate, written contract for the sale or escrow of the property.     
Over the objection of Tonys attorney, Gantt recorded the deed on August 31, 2000.  Gantt tendered a check to BB&T to pay off the mortgage and also sent a check of the net proceeds to Tonys attorney.  According to Gantt, Tony was not paid for the property at the time of closing on August 23rd as the closing had originally been scheduled for the following week on August 30th, so he held the deed in escrow pending the arrival of funds from Palmetto Bank the following week.  
The master upheld the validity of the deed, finding Tony was aware of the contents of the deed and he fully intended to deliver the deed to Gantt to be held pending only the receipt of the proceeds.  The master concluded there was no legal requirement for a written contract in this case, stating:  Part performance, in actuality, complete performance[,] took place when Tony Ashy signed all documents at the closing on August 23, 2000 including the general warranty deed and delivered this deed to Gantt to hold in escrow until the sales proceeds were received.  There is no statute of frauds argument in the context of the evidence in this case.    
LAW/ANALYSIS
On appeal, Tony claims the master erred in upholding the validity of the deed because there was no contract of sale or escrow contract supported by valid consideration, thereby violating the Statute of Frauds.  We disagree.
A deed is not legally effective until it has been delivered.  Donnan v. Mariner, 339 S.C. 621, 627, 529 S.E.2d 754, 757 (Ct. App. 2000).  Although there is no prescribed method for an effective delivery, the controlling question is the intent of the grantor at the time of the transaction.  Id.  If a grantor delivers a deed to a grantee or in escrow intending to part with control over it, the fee passes immediately to the grantees named within the deed.  Watson v. Cox, 117 S.C. 24, 28-29, 108 S.E. 168, 169 (1921).  
An escrow is a deed delivered to a third person upon a future condition to be performed by either party.  Brockington v. Lynch, 119 S.C. 273, 299, 112 S.E. 94, 103 (1922).  Every element of a valid escrow appears where [t]here are sufficient parties, a proper subject-matter, a consideration, and the parties have . . . contracted to place a deed in the hands of a third party to be delivered under the condition stated.  Id. at 299-300, 112 S.E. at 103.  Furthermore, an escrow cannot be revoked unless provided for in the agreement accompanying the escrow.  Id. at 300, 112 S.E. at 103.  Finally, an agreement to convey real property must be in writing and signed by the party to be charged, as required by the Statute of Frauds.  S.C. Code Ann. § 32-3-10(4) (1991).  
Tony testified he did not know he was signing a deed to convey his property and he never intended to sell the property.  Tony claimed Gantt asked him to be a witness in a lawsuit against Michael Alakhwan, who allegedly owed Tony money.  Tony thought the documents related to that case and Gantt needed him to testify on August 30 or 31, 2000.  
In contrast, Gantt recalled going over each of the documents with Tony.  Gantt told Tony he was signing a general warranty deed in consideration of $75,000 being delivered on August 30, 2000.  Gantt merely held the deed in escrow pending receipt of the funds.  The delay occurred because the closing had originally been scheduled for the following week.  Gantt maintained Tony agreed to these terms.  The closing lasted between thirty-five and forty minutes.    
Tina Burgess, a former paralegal at the law firm who helped with the closing, testified Tony did not seem to have a problem understanding or reading any of the documents placed in front of him.  Burgess and Gantt witnessed Tonys signature on the deed.    
Burgess recalled Tonys wife, Debbie Ashy, contacted the law firm on August 29, 2000, and asked when the proceeds from the sale would be distributed.  That day, Burgess faxed Debbie the documents signed at the closing with an attached note indicating the distribution of proceeds would be on August 31, 2000.  In contradiction to Tonys statement about his wifes concern of having too much money tied up in the property, Debbie testified she would have minded [n]ot a bit if Tony had sold the property.  She asserted, however, he did not realize what he had signed.  
We have consistently followed the rule that ordinarily one cannot complain of fraud in the misrepresentation of the contents of a written instrument signed by him when the truth could have been ascertained by reading the instrument, and that one entering into a written contract should read it and avail himself of every reasonable opportunity to understand its content and meaning.  OConnor v. Bhd. of R.R. Trainmen, 217 S.C. 442, 449, 60 S.E.2d 884, 886 (1950).
The rule is subject to the exception, which is very strictly interpreted by our Supreme Court, that if the party is ignorant and unwary, his failure to read the document may be excused.  Stanley Smith & Sons v. D.M.R., Inc., 307 S.C. 413, 417, 415 S.E.2d 428, 431 (Ct. App. 1992).  The court must consider an individuals education, business experience and intelligence in deciding whether a party may be classified as ignorant and unwary.  Id. 
The record is replete with evidence of Tonys abilities and business experience, including his ownership and operation of a nightclub, a bingo hall, and a gun and police supply store.  At the time of this suit, he owned five automobiles, including four Mercedes and one (1) old Rolls-Royce.  He and his wife owned several properties with a net worth of close to a million dollars.  In fact, he acknowledged during cross-examination that he was not altogether an unsophisticated businessman, stating, Sometimes.  Depends.    
As evidenced by Tonys signature on multiple documents, including the pay-off request signed before he even attended the closing, the testimony of Gantt and Burgess, inconsistencies in some of Tonys rendition of events, and Tonys business experience, we can find no error in the masters conclusion that Tony intended to deed the property to ACHI on August 23, 2000, contingent only upon receiving the loan proceeds the following week.  As noted by the master, the deed itself served to document the transaction, and it was signed by the party to be charged.  Accordingly, we agree with the master that the deed was an effective conveyance of the property. 
AFFIRMED.
GOOLSBY, HUFF, and STILWELL, JJ., concur.

[1]  We decide this case without oral argument pursuant to Rule 215, SCACR.