674 S.E.2d 510

Windle E. **SKIPPER**, as personal representative
of the Estate of C.D. Nixon, Respondent,

v.

Gloria N. **PERRONE** and Carol Repec Perrone,
as personal representatives of the Estate of
Joel E. Perrone, Appellants,

v.

Ray Nixon, LLC, Windle Skipper, individually and as the
personal representative of the Estate of C.D. Nixon, N.F.
Nixon, Jr., and John W. Ray, Third–Party Defendants.

No. 4489.

Court of Appeals of South Carolina.

Heard Dec. 11, 2008.

Decided Jan. 27, 2009.

Paul Dominick, of Charleston, Rose Duggan Manos, of Columbia, Willard D. Hanna, Jr., of Surfside Beach, for Appellants.

J. Jackson Thomas, of Myrtle Beach, for Respondent.

HUFF, J.

Gloria N. Perrone and Carol Repec Perrone, as Personal Representative of the Estate of Joel E. Perrone appeal the order of the special referee setting aside a deed on the ground of undue influence.  We affirm.

## FACTS/PROCEDURAL HISTORY

On October 25, 1993, a deed from C.D. Nixon to his sister, Gloria Perrone, and nephew, Joel E. Perrone, was filed in the Horry County Register of Deeds Office.  The deed was subsequently re-recorded on May 29, 1994.  It was witnessed by Margaret S. Mullinax and Beverly A. Bell. The stated consideration was $10.00.  The deed purported to convey:

ALL AND SINGULAR, the properties located in the County of Horry, State of South Carolina, in the Little River Township now owned by the Grantor, and being the remaining property conveyed to the Grantor by deed of East Cherry Grove Realty Company, a corporation, dated June 9, 1997, and recorded in the records of Horry County in Deed Book 584, page 617. The description in said deeds being included as if fully set out herein.

ALSO, All reservations, rights, interest in and rights of enforcing the same, which have not been sold, deeded, or transferred, including but not exclusive of those in any roads, avenues, attests, parks, lanes or beaches, together with all rights which have been reserved by the Grantor in prior conveyances as contained in the official Cherry Grove Beach Deed as restrictions and conditions.

Nixon passed away on December 13, 1995. Under the terms of his will, the bulk of his estate passed to a corporation to be formed and owned by John W. Ray, his long time accountant, and Dr. N.F. Nixon, Jr., his nephew and personal physician. Neither Gloria nor Joel Perrone was a beneficiary under the will.[1]

Windle E. Skipper, the personal representative of Nixon's estate, brought the present action on October 1, 2003 seeking to have the deed set aside on the grounds of lack of consideration, undue influence, lack of competency, that the deed was executed in blank, and lack of required witnesses. The circuit court dismissed the grounds of lack of consideration and lack of required witnesses. The remaining grounds were tried before the special referee.

The special referee found that during the latter part of 1993 Nixon was either incompetent or substantially impaired due to his advanced age and physical and mental condition. In addition, the referee held the consideration for the deed was grossly inadequate. Accordingly, the referee concluded the

---

1. Nixon left an unwitnessed memorandum to his will dated September 27, 1993 which provided:

   Recent events and statements made by several of my family members wherein they indicated that they might contest my Will or bring other actions against my Estate or Personal Representatives prompts me to issue this memorandum and ask that any court deny and reject such claims and that they receive no share of my Estate.

deed should be set aside on the grounds of undue influence. He rejected Appellants' defenses of laches, estoppel, and waiver. Appellants filed a motion to reconsider, alter, or amend, which the referee denied. This appeal followed.

## STANDARD OF REVIEW

An action to set aside a deed on the basis of undue influence is an action in equity. *Donnan v. Mariner*, 339 S.C. 621, 626, 529 S.E.2d 754, 757 (Ct.App.2000). When reviewing an action in equity, this court may review the evidence to determine facts in accordance with our own view of the preponderance of the evidence. *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989). "While this permits us a broad scope of review, we do not disregard the findings of the [referee], who saw and heard the witnesses and was in a better position to evaluate their credibility." *Id.*

## LAW/ANALYSIS

1. Undue influence

Appellants argue the referee erred in finding the deed was the product of undue influence. We disagree.

Generally, the party attacking a deed has the burden of proof. *Middleton v. Suber*, 300 S.C. 402, 405, 388 S.E.2d 639, 641 (1990). However, the supreme court held an inference of undue influence will arise upon a showing of great mental weakness of the grantor and gross inadequacy of consideration. *Brooks v. Kay*, 339 S.C. 479, 490, 530 S.E.2d 120, 125–26 (2000). The court explained:

> It is not necessary, in order to secure the aid of equity, to prove that the deceased (grantor) was at the time insane, or in such a state of mental imbecility as to render her entirely incapable of executing a valid deed. It is sufficient to show that from her sickness and infirmities she was at the time in a condition of great mental weakness, and that there was gross inadequacy of consideration for the conveyance. From these circumstances imposition of undue influence will be inferred.

*Id.* at 490, 530 S.E.2d at 125–26. The court recognized this inference applies even absent a confidential relationship. *Id.* at 490, 530 S.E.2d at 126.

The referee held that Nixon was either incompetent or substantially impaired due to his advanced age and physical and mental condition at the time of the execution of the deed. Dr. N.F. Nixon, who was Nixon's nephew, treating physician, and one of the remainder beneficiaries of his estate, testified that in late 1990 or early 1991, Gloria Perrone's daughter, Melinda Floyd, spoke to him about her concerns that the people who were supposed to be looking after Nixon were in fact looking out for their own interests and were getting him to sign deeds. On July 10, 1991, Gloria Perrone, Floyd, and Dr. Nixon met with the probate judge. However, at that time they were not ready to have Nixon declared incompetent and no action was taken.

Dr. Nixon stated that by the early 1990's, Nixon had undergone senile dementia and was not capable of protecting himself from people who were taking advantage of him. He described Nixon's living conditions as squalid and stated Nixon was always on the couch reeking of urine and was unable to toilet himself. Dr. Nixon asserted Nixon would "sign just about anything that anyone would bring to him, just to get away from the stress of it." Dr. Nixon related that in 1992, he had Nixon grant him a deed to a tract adjoining property he already owned. Dr. Nixon acknowledged that although he believed C.D. Nixon knew him and agreed to the sign the deed, he did not have the ability to not sign and that Nixon would sign anything anyone brought him.

Margaret Mullinax, who lived with Nixon from August of 1993 until his death, testified that when she came to live with him, his entire house smelled of urine and he had not been well taken care of by his previous caretaker. She and other family members decided to have the county nurses come to Nixon's house to check on him regularly. She stated the previous caretaker took advantage of Nixon and had him sign deeds giving her property. She recalled Nixon often signed deeds in blank and left them lying around.

Carlton Bell, Nixon's longtime attorney, stated that after Nixon broke his arm in 1991 or 1992, his dementia progressed. On December 16, 1993, when Nixon came to Bell's office to

execute a deed, Bell had great concerns about Nixon's competency to execute the deed. Bell allowed Nixon to execute the deed because he believed that if Nixon had not executed the deed, he and Nixon's other attorney in fact could have executed it on his behalf.[2] He stated he did not want to have to tell Nixon he was incompetent when the transaction would have happened anyway. That was the last deed Bell helped Nixon execute.

Not long after Nixon executed the deed in the present case, he executed a deed on November 17, 1993 reserving a life estate to himself in all of his property in Horry County and conveying the remainder to Gloria Perrone's daughters Debbie Perrone Fowler and Melinda Perrone Fowler, a great niece Sue Nye Watson, and Margaret Mullinax. This deed was subsequently set aside on the basis of undue influence. Although Bell executed several deeds during this time period that have not been set aside, there is no evidence Skipper or Bell himself sought to set aside those deeds.

In May or June of 1994, Bell visited Nixon after receiving a call from his caretaker, Olea Ward. Bell found Nixon in an almost comatose state. Bell called Dr. Nixon and another friend of Nixon to help them. In September of 1994, Dr. Nixon, Gloria Perrone and other family members filed a petition for a conservator for Nixon. The probate court appointed temporary joint conservators in October of 1994.

We agree with the referee that Bell was in substantially weakened mental state at the time of the execution of the deed.

In addition, the referee held the compensation listed in the deed was grossly inadequate. There is no evidence in the record as to the exact value of the property. However, Bell testified the deed conveyed the marsh and whatever else the East Cherry Grove Realty Company may have owned at the time of its dissolution. This included a channel lot, which Bell stated was extremely valuable at the time of the execution of the deed.[3] In addition, the property conveyed by the deed

---

2. Unknown to Bell, the power of attorney naming Bell and Olea Ward as attorneys in fact was revoked on October 27, 1993.

3. Bell had handled transactions for similar lots and was familiar with their value.

included land between the front line of lots previously conveyed and the Atlantic Ocean. Bell explained that the mean high water mark had changed since the original deeds leaving up to 300 feet between the lots. Nixon had seen the property as having some value and had contacted lot owners inquiring if they wanted to expand their lots and most of them did at some price. Bell testified that according to the State of South Carolina, the marshland was worth approximately eight hundred to a million dollars per acre. It would also be worth something to an adjoining landowner who needed access to the channel across the property. However, to someone who does not own property there, it has no value.

After receiving the deed, the Perrones brought several actions against DHEC, the City of North Myrtle Beach, and private parties asserting their exclusive rights to the properties and seeking damages. In an order approving plans for pursuing real property claims by the estate of Joel Perrone, the probate court noted the Perrones' attorney informed the court that the claims "could amount to millions of dollars in recoveries." Thus the evidence in the record is that the property was extremely valuable and potentially worth millions. We find the evidence supports the referee's determination that the consideration for the deed of $10.00 was grossly inadequate. Accordingly, we hold the referee did not err in inferring the deed was the product of undue influence.

### 2. Laches

The Perrones argue the referee erred in failing to apply the doctrine of laches to bar Skipper's claims. We disagree.

"Under the doctrine of laches, if a party, knowing his rights, does not seasonably assert them, but by unreasonable delay causes his adversary to incur expenses or enter into obligations or otherwise detrimentally change his position, then equity will ordinarily refuse to enforce those rights." *Chambers of S. C., Inc. v. County Council for Lee County*, 315 S.C. 418, 421, 434 S.E.2d 279, 280 (1993). "Laches connotes not only an undue lapse of time, but also negligence and opportunity to have acted sooner." *Id.* at 421, 434 at 281. The party seeking to establish laches must show (1) delay, (2)

unreasonable delay, and (3) prejudice. *Hallums v. Hallums,* 296 S.C. 195, 199, 371 S.E.2d 525, 528 (1988).

The Perrones assert the doctrine of laches should apply because this action was not filed until almost ten years after the date of the deed. They assert they were prejudiced by the delay because by the date of the trial, Joel Perrone had passed away, and Gloria Perrone was in such poor health that she could not testify at trial. In addition, deed witness Beverly Bell was unable to testify at trial because of her health problems, Olea Ward passed away before the trial, and Margaret Mullinax could not be located to testify at trial.

From the time Nixon executed the deed until his death, he suffered from diminished mental capacity and may not have been able to bring an action to set aside the deed. Skipper testified that he was not familiar with the deed before Nixon died and after Nixon's death he concentrated on having another deed set aside. He stated he did not really concentrate on the present deed until he was about to close the estate and it was brought to his attention that he should look at the deed. By then, Joel Perrone had passed away and Gloria Perrone was bedridden. We find Skipper did not exercise unreasonable delay in bringing this action once he was aware of the circumstances of the deed. In addition, the prejudice to the Perrones was not as great as they claim. Although Ward, Mullinax, and Beverly Bell were not able to testify at trial, they had previously testified in depositions, which were presented at trial.

The referee held, "I see nothing in the facts of the case at bar to indicate that here, where undue influence was used to obtain valuable property from an old, sick, mentally weak man, the Court should exercise its discretion in favor of [the Perrones'] laches defense." This court recognized, "Laches is a defense in equity, and one who comes to the court seeking equity must come with clean hands." *Emery v. Smith,* 361 S.C. 207, 220, 603 S.E.2d 598, 605 (Ct.App.2004).

Accordingly, we find no error in the trial court's ruling on this issue.

3. Waiver

The Perrones argue the referee erred in failing to apply the doctrine of waiver to bar Skipper's claim. They

assert that Nixon intentionally abandoned and waived a claim to set aside the deed by taking no action after telling Bell that he wanted to have the deed set aside. We disagree.

Waiver is a voluntary and intentional abandonment or relinquishment of a known right. *Strickland v. Strickland,* 375 S.C. 76, 85, 650 S.E.2d 465, 470 (2007). It may be expressed or implied by a party's conduct. *Parker v. Parker,* 313 S.C. 482, 487, 443 S.E.2d 388, 391 (1994).

At the time Nixon discussed setting aside the deed with Bell, he was greatly infirmed. Bell, who was his long-time attorney, advised him that he would have to seek another attorney to represent him as Bell would most likely have to appear as a witness in an action to set aside the deed. We find Nixon did not intentionally abandon the claim by not trying to find another attorney, given his mental condition.

## CONCLUSION

For the foregoing reasons, the decision of the master is **AFFIRMED.**

ANDERSON, HUFF, and THOMAS, JJ. concur.