Reginald C. CANNON, Thomas Henderson, David Peele, Steve Sokol, Robert Barnes, Nelson U. Crosby, Plaintiffs,

v.

H.K. PORTER COMPANY, INC., et al., Defendants.

Civ. A. Nos. 83–182–NN to 83–184–NN, 88–117–NN and 88–118–NN.

United States District Court, E.D. Virginia, Newport News Division.

Feb. 8, 1989.

Robert R. Hatten, Donald N. Patten and Jonathan A. Smith–George, Patten, Wornom & Watkins, Newport News, Va., for plaintiffs.

Robert L. O'Donnell and Thomas M. Lucas, Vandeventer, Black, Meredith & Martin, Norfolk, Va., for defendant Pittsburgh Corning Corp.

Glen A. Huff, Huff, Poole & Mahoney, Virginia Beach, Va., for defendants H.K. Porter Co. and Southern Textile Corp.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

This matter comes before the Court on Motions for Summary Judgment filed by the defendant Pittsburgh–Corning Corp. and adopted by the defendants H.K. Porter Co. and Southern Textile Corp. These defendants assert that plaintiffs' settlements with and releases of various other defendants release them as well. For the reasons discussed below, defendants' Motions are DENIED.

### Background

Plaintiffs are former employees of the Newport News Shipbuilding and Dry Dock Co. who, in the course of their employment, were exposed to various asbestos-containing insulation products manufactured, distributed and/or sold by the defendants. Each plaintiff was diagnosed as suffering from an asbestos-related disease, and each filed suit before July 1, 1979. During the period May 1983 through January 1985, each plaintiff entered into partial settlements with various other defendants and executed separate Covenants Not to Sue with each.

The Covenants were all essentially identical. Each agreed to dismiss the plaintiff's claim against the settling defendant in exchange for the payment of a portion of the value of the plaintiff's claim. The parties agreed on the method for determining the amount by which the covered settlement would reduce any amount eventually recovered in judgment against any other defendants for asbestos-related claims. The plaintiffs expressly reserved their "rights of action, claims and demands against any and all persons, firms or corporations other than the [settling defendant]."

These cases were set for trial on February 14, 1989. The defendant Pittsburgh–Corning filed the instant Motions on January 13, 1989, and the defendants H.K. Porter and Southern Textile adopted the Motions on January 24, 1989.[1]

1. At oral argument on these Motions, counsel for the plaintiffs informed the Court that plaintiffs Sokol and Crosby had executed settlements on the previous day with the defendant Eagle–Picher. Pittsburgh–Corning promptly moved to dismiss these plaintiffs on the grounds that the new releases also served to release Pittsburgh–Corning. These Motions raise a significantly

These cases have been played out against a backdrop of significant changes in the law in this Circuit and in the Commonwealth of Virginia, centering on the effect of partial settlements under Virginia law and the applicability of admiralty law to shipyard worker asbestos cases. At the time of plaintiffs' injuries and the filing of these actions, Virginia held to the common law rule that a release of one joint tort-feasor releases all. This rule was abrogated by the Virginia legislature's adoption of Va.Code Ann. § 8.01–35.1, effective July 1, 1979. This statute provides that a release of one joint tort-feasor will not discharge any other joint tort-feasors unless it specifically so provides. Further, a settling tort-feasor is discharged from all liability for contribution to any others. A 1982 amendment to the statute made clear that it was intended to apply to all releases executed after the statute's effective date, regardless of when the underlying cause of action accrued.

In 1984 and 1985, the Supreme Court of Virginia decided cases holding that retroactive application of Section 8.01–35.1 was unconstitutional. *Potomac Hosp. Corp. v. Dillon,* 229 Va. 355, 329 S.E.2d 41, *cert. denied,* 474 U.S. 971, 106 S.Ct. 352, 88 L.Ed.2d 320 (1985); *Shiflet v. Eller,* 228 Va. 115, 319 S.E.2d 750 (1984). The court held that retroactive application of the statute was invalid insofar as it affected a nonsettling joint tort-feasor's substantive rights to contribution. Accordingly, the court held that, notwithstanding the 1982 amendment, it must apply the law that existed at the time the cause of action accrued, regardless of when settlement is reached.

The Fourth Circuit has held that Virginia law, rather than federal common law, controls the effect of releases in federal diversity actions in Virginia. *Auer v. Kawasaki Motors Corp.,* 830 F.2d 535 (4th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1076, 99 L.Ed.2d 236 (1988). This rule has been specifically applied to asbestos cases based on diversity jurisdiction. *Cave v. Johns–Manville,* No. 85–1865, slip op. at 6–7 (4th Cir. Feb. 19, 1988) [843 F.2d 1386 (table) ].

The question of the applicability of admiralty law to these cases is also critical. In 1981, the Fourth Circuit held that the federal courts had jurisdiction in admiralty to hear shipyard worker asbestos cases.[2] *White v. Johns–Manville Corp.,* 662 F.2d 234 (4th Cir.1981) *("White II"), cert. denied,* 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982). Four years later, the Fourth Circuit reversed its position and overruled *White II,* joining the majority of other circuits that had held that admiralty law was inapplicable to land-based shipyard worker claims. *Oman v. Johns–Manville Corp.,* 764 F.2d 224 (4th Cir.) (en banc), *cert. denied,* 474 U.S. 970, 106 S.Ct. 351, 88 L.Ed.2d 319 (1985). The Fourth Circuit has recently held that the *Oman* rule should not be applied retroactively for purposes of the statute of limitations, allowing plaintiffs who filed suit in reliance on admiralty law to claim the benefit of admiralty's three-year statute of limitations. *Grimes v. Owens–Corning Fiberglass Corp.,* 843 F.2d 815 (4th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 221, 102 L.Ed.2d 211 (1988).

*Discussion*

◼ As a threshold matter, the plaintiffs argue that the defendants' Motions are untimely on two separate grounds. Rule 8(c) of the Federal Rules of Civil Procedure provides that affirmative defenses, including release, must be asserted in the pleadings or they are waived. *See, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639 (2d Cir.1988); *Kennedy v. City of Cleveland,* 797 F.2d 297 (6th Cir.1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987); *Marine Overseas Servs., Inc. v. Crossocean Shipping Co.,* 791 F.2d 1227 (5th Cir.1986). The key case establishing Virginia law on the effect of partial settlements was decided in 1985;

different factual situation than the present Motions. The latest Motions have been neither briefed nor argued, and they are not properly before the Court at this time.

**2.** Following the *White II* decision, the plaintiffs amended their complaints to include claims sounding in admiralty.

the Fourth Circuit made clear in 1987 that state law controls the effect of release in federal diversity cases. The defense of release was not available under the law or the facts at the time the defendants answered these complaints. However, the defendants failed to amend their pleadings as soon as this potential defense was known to them, and it is waived. Plaintiffs are correct that a motion for summary judgment will not revive the defense. *Funding Sys. Leasing Corp. v. Pugh*, 530 F.2d 91, 96 (5th Cir.1976).

■ In addition, the plaintiffs argue that the Motions, filed three years after the *Potomac Hospital* case and barely one month before trial, are barred by the doctrine of laches. The defendants have offered no reason for waiting until this late hour to file these Motions, and the plaintiffs have incurred significant expenses preparing for trial. The Court concludes that, under either theory, the Motions are untimely.

■ Even if these Motions were timely, they would fail on the merits. The defendants assert that Virginia law is clear that settlement with one joint tort-feasor for a claim arising before July 1979 releases all. The plaintiffs argue that the settlements here were executed during the period in which admiralty law was applicable to such claims in this Circuit, and that they are entitled to rely on the admiralty rule allowing partial settlements.

The defendants argue that the Fourth Circuit's ruling in *Cave*, a case defendants describe as "virtually identical" to these cases, is controlling here. Under *Cave*, the court in a diversity asbestos case must apply pre–1979 Virginia common law holding that the release of one joint tort-feasor releases all. The Court notes that *Cave* involved a land-based construction worker who asserted federal jurisdiction based solely on diversity grounds, with no admiralty claims. *Cave* is not on point here, where the key question to be resolved is the continued applicability of admiralty law.

The Fourth Circuit in *Grimes v. Owens–Corning Fiberglass Corp.* set forth the appropriate factors to be considered to determine if a new rule of law should be applied retroactively, based on the Supreme Court's analysis in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The three factors are interrelated, and it is not necessary that each tier be fully satisfied to preclude retroactivity. *Grimes*, 843 F.2d at 819.

The first factor to be considered is whether the decision overrules "clear Circuit precedent on which the complaining party is entitled to rely." *Id.* (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987)). Defendants argue that *White II*, applying admiralty law to this type of claim, was not settled precedent at the time of the settlements because related cases had been appealed and because other circuits had declined to follow *White II*. These arguments are without merit; the Fourth Circuit determined in *Grimes* that *White II* was clear precedent in this Circuit at the time. 843 F.2d at 819.

The defendants also argue that the plaintiffs did not rely on admiralty law because the settlements noted that a final allocation of credits to codefendants would be based on a final determination of whether admiralty law or Virginia law applies to the credits. However, the settlements also specifically allocated a portion of the payments to plaintiffs' spouses for their claims for loss of consortium, a claim cognizable at admiralty law but not under Virginia law. Moreover, the plaintiffs "need not prove reliance on this precedent, but only the existence of 'past precedent on which litigants *may have* relied.'" *Grimes*, 843 F.2d at 819 (quoting *Chevron*, 404 U.S. at 106, 92 S.Ct. at 355) (emphasis added).

The second step in the *Chevron* analysis requires an examination of the purpose of the new rule of law to determine whether retroactive application would further or hinder that purpose. The Fourth Circuit has explained that Oman's purpose "for refusing to exercise admiralty jurisdiction rests in great part on the federal courts' deference to the states' sovereign powers."

*Grimes,* 843 F.2d at 820. In the present situation, as in *Oman,*

> Nonretroactivity on such a limited scale as the one at bar does not infringe upon the sovereign rights of the Commonwealth of Virginia. Only a limited and identifiable class of possible claimants, those who were entitled to rely on *White II,* will be able to take advantage of the nonretroactive application of *Oman.*

*Id.* Additionally, defendants are in no way prejudiced by the partial settlements. Until September of 1988, Pittsburgh–Corning and H.K. Porter were members of the "Wellington Group" of defendants and as such agreed to waive their rights to indemnification or contribution from other members. The settlement agreements protect nonsettling defendants by providing that any eventual judgment will be reduced by the amount of the settlement. The second tier of the *Chevron* test is satisfied, or is at least neutral as to either side. *See Grimes,* 843 F.2d at 821 (Haynsworth, J., concurring).

The third factor of the *Chevron* test requires a weighing of the equities. The defendants argue that the equities are in their favor because they have consistently opposed admiralty jurisdiction and are entitled to the benefit of their victory on this point and because the plaintiffs did not rely on admiralty law in the settlements. Clearly, the plaintiffs relied on the admiralty rule allowing partial settlements, as demonstrated by the lengthy preparations plaintiffs have undertaken for trial with the remaining defendants and by the presumably smaller amounts of the partial settlements. It is also notable that the defendants have themselves executed numerous partial settlements with plaintiffs in this jurisdiction in which plaintiffs' rights were expressly reserved. Finally, the settlements in question here were executed from four to six years before these Motions were filed. The defendants can not credibly assert that they expected to be released by these settlements.

Applying the *Oman* rule retroactively would give the defendant class a double advantage. Settling defendants have received the advantage of the admiralty rule because, presumably, the plaintiffs agreed to a lower settlement amount in expectation of additional payments from other defendants. Nonsettling defendants would then get the benefit of the changed rule by securing a full release from their own liability based on these smaller settlements. The equities in this case clearly favor nonretroactive application of *Oman,* to protect the plaintiffs' good faith reliance on admiralty law in partially settling their claims.

In addition to the arguments discussed above, the plaintiffs urge that the defendants should be estopped from asserting the releases as a defense because the defendants have successively taken inconsistent and mutually contradicting positions regarding partial settlements in the course of the asbestos litigation in this Court. In light of the Court's disposition of these Motions based on the *Grimes* analysis, this argument will be addressed only briefly.

The plaintiffs point out that each defendant has executed numerous partial settlements, both before and after *Potomac Hospital,* and that these covenants all contained a reservation of plaintiffs' rights. In addition, plaintiffs argue, the defendants have previously acknowledged that there is no prejudice in partial settlements by joining the Wellington Group and waiving their rights against other defendants.

■ Plaintiffs argue that the defendants are estopped from taking inconsistent positions as to the partial settlements based on a theory of judicial estoppel. *See Van Gaalen v. Sparks,* 555 F.Supp. 325 (E.D. Va.1983); *Thrasher v. Thrasher,* 210 Va. 624, 172 S.E.2d 771 (1970). The doctrine of judicial estoppel generally applies only where a party has made inconsistent assertions of fact. 31 C.J.S. *Estoppel* § 120 at 651 (1964). It is unclear whether judicial estoppel applies in this case, where defendants are taking successive and inconsistent positions on what is essentially a question of law. This question has not been fully briefed or argued, and the Court finds it unnecessary to decide this issue in light of its decision that the *Oman* rule should not apply retroactively in these cases.

This case is complicated by the fact that counsel for one of the moving defendants, Pittsburgh–Corning, also represents the defendants Owens–Illinois, Inc. and Eagle–Picher Co. Both of the latter companies have previously executed a settlement with at least one of the six plaintiffs here. According to the plaintiffs, this law firm actually negotiated the Covenant Not to Sue between its client Owens–Illinois and the plaintiff Sokol; the law firm now seeks to repudiate this Covenant's reservation-of-rights clause for the benefit of another client, Pittsburgh–Corning. Plaintiffs' counsel has also represented to the Court that Eagle–Picher, through its corporate headquarters, has made settlement offers to all plaintiffs in this trial group but that plaintiffs will not accept these offers for fear that Pittsburgh–Corning will attempt to assert the settlements as a release.

The Court denied the plaintiffs' Motion to disqualify the law firm in question, as replacement of counsel at this stage would merely delay the proceedings and would not remedy the inconsistent positions of the various defendants. In addition, the Court is unconvinced that inconsistent positions taken by a law firm on behalf of different clients are sufficient in themselves to warrant denial of the summary judgment motions on an estoppel theory. However, the Court must express the strongest disapproval of the position in which this firm has placed itself, whether intentionally or not. Although the firm's clients may have waived any conflicts of interest, the fact remains that the firm must take a position for one client that prejudices the interests of another client, of the plaintiffs and of the Court itself.

For the foregoing reasons, the defendants' Motions to Dismiss on the grounds of release are DENIED.

IT IS SO ORDERED.