THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
 THE STATE OF SOUTH CAROLINA
 In The Court of Appeals
 
 
 
 
 The State, Respondent,
 
 
 
 
 v.
 
 
 
 
 Terrence Edwards, Appellant.
 
 
 
 
 
 Appeal From Abbeville County
  Wyatt T. Saunders, Jr., Circuit Court Judge
 
 Unpublished Opinion No. 2005-UP-256
 Heard March 9, 2005  Filed April 7, 2005
 
 AFFIRMED
 
 
 
 
 
 Robert M. Dudek, Office of Appellate Defense, of Columbia, and Ernest Charles Grose, Jr., of Greenwood, for Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Melody J. Brown, all of Columbia; and Solicitor William Townes Jones, of Greenwood, for Respondent.
 
 
 
 
 PER CURIAM: This appeal arises from the conviction of Terrence Edwards for charges related to the death of Jonathan Blackston.  Edwards complains the State made statements during his trial that were inconsistent with those made by the State during a co-defendants plea hearing.  Additionally, he argues prejudicial evidence should have been excluded.  We affirm. 
 FACTS 
 Terrence Edwards and Sergio Marshall were indicted for the offenses of murder, armed robbery, grand larceny of a vehicle, possession of a pistol by a person less than twenty-one years of age, and possession of a firearm or knife during the commission of a violent crime.  All of the charges arose from the shooting of Jonathan Blackston.
Marshall pled guilty to all of the charges and was sentenced to a total of thirty-five years imprisonment.  Subsequently, the case against Edwards went to trial.  The jury found against Edwards on all counts.  The court sentenced Edwards to thirty years imprisonment for murder, twenty-five years consecutive for armed robbery, and five years concurrent on each of the charges of grand larceny of a vehicle, possession of a pistol by a person under the age of twenty-one years of age, and possession of a weapon during the commission of a violent crime.  
 STANDARD OF REVIEW
 
 In criminal cases, the appellate court sits to review errors of law only.  We are bound by the trial courts factual findings unless they are clearly erroneous.  State v. Wilson, 345 S.C. 1, 5-6, 545 S.E.2d 827, 829 (2001).  This Court does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judges ruling is supported by any evidence.  Id. at 6, 545 S.E.2d at 829.  
 LAW AND DISCUSSION
 
 I.   Collateral and Judicial Estoppel
 Edwards appeals his conviction, arguing the State pursued theories against him and Marshall that were inconsistent and should have been barred by collateral and judicial estoppel.  We disagree.  
 South Carolina courts have not specifically addressed the applicability of collateral or judicial estoppel in criminal prosecution.  The United States Supreme Court has recognized that collateral estoppel may be applied in cases of federal criminal law.  Ashe v. Swenson, 397 U.S. 436, 443-44 (1970).  Collateral estoppel in practice simply means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the same parties in any future lawsuit.  Id. at 443.  
 We have adopted a rule for determining whether a party in South Carolina is precluded from relitigating an issue with a nonparty.  [T]o assert collateral estoppel successfully, the party seeking issue preclusion still must show that the issue was actually litigated and directly determined in the prior action and that the matter or fact directly in issue was necessary to support the first judgment. Beall v. Doe, 281 S.C. 363, 371, 315 S.E.2d 186, 191 (Ct. App. 1984).
 Judicial estoppel precludes a party from adopting a position in conflict with one earlier taken in the same or related litigation.  Hayne Fed. Credit Union v. Bailey, 327 S.C. 242, 251, 489 S.E.2d 472, 477 (1997).  The doctrine exists to protect the integrity of the judicial process and courts rather than to protect litigants from allegedly improper or deceitful conduct by their adversaries. Id.  The supreme court has stated the following elements are necessary for the doctrine of judicial estoppel to apply: (1) two inconsistent positions taken by the same party or parties in privity with one another; (2) the positions must be taken in the same or related proceedings involving the same party or parties in privity with each other; (3) the party taking the position must have been successful in maintaining that position and have received some benefit; (4) the inconsistency must be part of an intentional effort to mislead the court; and (5) the two positions must be totally inconsistent.  Cothran v. Brown, 357 S.C. 210, 215-216, 592 S.E.2d 629, 632 (2004).
 Importantly, a threshold determination in any discussion of the applicability of either collateral or judicial estoppel is that two inconsistent statements were made.  To determine this, the court must examine the exact language used at Marshalls plea hearing and Edwards trial.  
 Chief Sheriffs Deputy Marion Johnson and Solicitor Townes Jones provided the factual predicate for the crime against Marshall.  Johnson began by explaining:
 
 Marshall . . . kind of held back on us, wouldnt tell us anything . . . .  He did come forward and admitted to shooting  the defendant admitted to shooting . . . the victim . . . .  There were two gunshot wounds to the body, one to the arm and the other to the back of the head.  There was also blunt trauma around the chest and arms and the rest of the body. . . .  They also did take a wallet from the pocket of Mr. Blackston which contained about one hundred and fifteen dollars, and they split the money up and went to the Anderson County Fair . . . .
 
 Next, the court asked about Marshalls motive.  Johnson replied, From what Mr. Edwards states and the best we can determine they were out there, and they were rolling up a joint . . . and for some reason Mr. Marshall was the one that actually shot Mr. Blackston.  
 Solicitor Jones then interrupted and stated: 
 
 [R]elying solely on the evidence that we would be prepared to present at trial in this case, you know, we would have presented to the jury that this defendant and the victim were together alone, they were acquaintances, and they had no prior evidence of a significant problem or threat to do bodily harm to either prior (sic) to this occasion.  But . . . there were verbal disagreements or verbal remarks between the two that one could surmise and conclude amounted to a kind of machismo standoff . . . .  [A]nd unfortunately a relationship that on the surface appeared to be one that involved friendship turned quickly, abruptly deadly.  That would be our argument.
 
 The solicitor continued regarding motive: 
 
 We would not be able to argue that we had evidence to show that there was a conspiracy or that there was any plan and intent to commit this robbery, but nevertheless, the fact that it was conducted in conjunction with the murder in our opinion would give rise to argue at least that it was in the mind of the murderer.
 
 And concluded, [W]hat I have presented to you would have been the argument that we would have made from the facts that we felt we would have had at trial. 
 Later, at Edwards trial, the solicitor in his closing statement explained the shooting might have begun as a robbery, but if Blackston refused, Mr. Gunman says enough of that, pop.  The solicitor continued by saying, Assuming that Sergio was the shooter, Edwards helped him move the body, get away from the scene, they gave each other an alibi, and aid[ed] and abet[ted] each other.  
 Edwards argues the State suggested he was the gunman in the closing statement whereas the factual predicate in the Marshall plea shows the States understanding and theory was that Marshall was the gunman.   
 After a careful review of the record, we cannot determine the solicitors comment that Mr. Gunman says enough of that, pop, constitutes a suggestion Edwards was the gunman.  Edwards seeks to pair this language with the solicitors comments on Edwards claim he was just an accessory after the fact with regards to the robbery charge.  The solicitor did ridicule such a claim, characterizing Edwards counsels argument as, Hes going to try to tell you what I did for [Marshall] was dumb.  It was dumb and it was, uh, lets see, accessory after the fact.  He was already shot and dead, and Terrence came along and helped him afterwards, or he was already robbing him and Terrence just kind of helped him afterwards, kind of.  The solicitor did anticipate and attack the arguments likely to be advanced on behalf of Edwards, but we do not see how that attack contradicts the States comments at Marshalls plea hearing.
 In examining the transcript from the plea hearing, the only comment that gives the court pause is the solicitors statement that relying solely on the evidence that we would be prepared to present at trial in this case . . . we would have presented to the jury that this defendant and the victim were together alone, . . .  [and the] friendship turned quickly, abruptly deadly.  (emphasis added).  The solicitors use of the word alone is the linchpin of Edwards case.  However, when read against the full explanation that had just been provided to the court by Johnson, it is not enough.  Johnsons explanation clearly showed that another person, Edwards, was present and a co-defendant in this case.  As such, any reliance on the term alone is mitigated by the fuller explanation provided to the court by the State.  Just as a court cannot view a term in isolation when interpreting a statute or contract, or determining whether a jury charge is in error, we will not wrench from context a comment made by the solicitor in this case.  See e.g. Schulmeyer v. State Farm Fire & Cas. Co., 353 S.C. 491, 495-96, 579 S.E.2d 132, 134 (2003).
 After a careful reading of the States explanation of the case in the Marshall plea hearing and the States arguments at trial, we find no inconsistent position.  We specifically decline to address South Carolinas adoption of either collateral estoppel or judicial estoppel in the criminal context, and instead hold that neither would apply because there was no inconsistency between the solicitors positions.
 II.   Admission of statement by Edwards
 Edwards also argues a statement he made to police was so prejudicial that it should not have been admitted into evidence.  We disagree.
 Edwards argues the court erred in admitting his statement: Sergio and I had joked before about robbing somebody.  He asserts it should have been excluded because the State was collaterally and judicially estopped from trying to make a planned robbery an issue based on its assertions at Marshalls plea hearing.  Edwards also argues the probative value of the evidence was substantially outweighed by its prejudicial effect.  We disagree.
 After asserting that the State was barred from entering this evidence based on collateral and judicial estoppel, Edwards does not address this issue in the body of his argument.  In Fields v. Melrose Ltd. Partnership, 312 S.C. 102, 439 S.E.2d 283 (Ct. App. 1993), this court found an issue was abandoned on appeal when the parties raised the issue in their statement of appeal but did not argue it in their brief.  Id. at 106, 439 S.E.2d at 285.  We similarly find Edwards has abandoned this issue on appeal because he has not discussed it in his brief.
 However, even if we were to consider the issue on appeal, we would determine that neither collateral nor judicial estoppel barred the introduction of the evidence that Marshall and Edwards joked about committing a robbery.  The States explanation of the crime at Marshalls plea hearing was that:
 
 We would not be able to argue that we had evidence to show that there was a conspiracy or that there was any plan and intent to commit this robbery, but nevertheless, the fact that it was conducted in conjunction with the murder in our opinion would give rise to argue at least that it was in the mind of the murderer. 
 
 This statement is at best inconclusive and unclear.  It admits the State did not have admissible evidence of a conspiracy to commit a robbery while also maintaining its commission in conjunction with the murder suggests it was in Marshalls mind.  The explanation that the State could not prove a conspiracy to commit robbery should not prevent introduction of the portion of the statement discussing the joking reference to robbing someone.
 Edwards also argues the statement should have been excluded because it was overly prejudicial.  Rule 403, SCRE, says otherwise admissible evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . .  Unfair prejudice means an undue tendency to suggest a decision on an improper basis.  Kennedy v. Griffin, 358 S.C. 122, 127, 595 S.E.2d 248, 250 (Ct. App. 2004). 
 A trial judges decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances.  State v. Hamilton, 344 S.C. 344, 357, 543 S.E.2d 586, 593 (Ct. App. 2001).  We review a trial courts decision regarding Rule 403 pursuant to the abuse of discretion standard and are obligated to give great deference to the trial courts judgment.  State v. Myers, 359 S.C. 40, 48, 596 S.E.2d 488, 492 (2004). 
 Because the testimony was that Edwards was at the scene of the crime, the joke was relevant to show he was acting in unison with Marshall.  Although the joke was certainly prejudicial, we also find it relevant.  We note the admission of the joke did not prevent Edwards from presenting a defense that he was merely present and not involved with the shooting.  In fact, this appears to have been the ultimate strategy of trial counsel.  It resulted in charges by the judge on mere presence and the hand of one is the hand of all.  We cannot determine that the testimony engendered any undue tendency in the jury to reach a verdict of guilty solely or even primarily on this evidence.  Therefore, we find the trial court did not abuse his discretion by allowing the testimony into evidence.
 AFFIRMED.
 ANDERSON, BEATTY, and SHORT, JJ., concur.