**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

In the Matter of the Estate of Harriet Kathleen Henry Tims, Decedent,

Samuel H. Tims, individually and as a Co-Personal Representative of the Estate of Harriet Kathleen Tims, Petitioner,

v.

Michael Tims, individually and as Co-Personal Representative of the Estate of Harriet Kathleen Tims, Respondent,

And

Deborah T. Krane, individually and as Co-Personal Representative of the Estate of Harriet Kathleen Tims, Appellant.

Appellate Case No. 2018-001605

———————

Appeal From Beaufort County
Carmen T. Mullen, Circuit Court Judge

———————

Unpublished Opinion No. 2021-UP-281
Heard April 13, 2021 – Filed July 21, 2021

———————

**AFFIRMED**

———————

Peter Brandt Shelbourne, of Shelbourne Law Firm, of Summerville, and Eric Matthew Campbell, of Trask & Howell, LLC, of Mount Pleasant, for Appellant.

Mills Lane Morrison, Jr., of The Law Offices of Darrell Thomas Johnson Jr., LLC, of Hardeeville, for Respondent.

_____

**PER CURIAM:** In this estate dispute, Harriet Tims (Decedent) died intestate, having certain real property titled in her name. Decedent's three children, Samuel Tims, Respondent Michael Tims, and Appellant Deborah T. Krane, disagree on whether this property is an asset of the estate or a trust in favor of Respondent. Samuel filed a declaratory judgment action, later joined by Respondent, asking the court to determine the rights of the parties regarding the property. Appellant filed a motion for summary judgment, arguing the action was time barred under section 62-3-803 of the South Carolina Code (2014), otherwise known as the nonclaim statute. The circuit court ruled the nonclaim statute did not apply because the action was a dispute involving title to real property. On appeal, Appellant argues the circuit court erred by finding that (1) the action was not barred by the nonclaim statute; (2) the land exchange agreement (LEA) created a resulting trust for Respondent; and (3) Appellant was not entitled to a jury trial. We affirm.

## FACTS/PROCEDURAL HISTORY

The property at issue is a 26.89 acre tract (the Property) located in Beaufort County that was originally acquired by Respondent in 1993 for $65,000.[1] Respondent resided on the Property with his family and operated a deer processing business on the Property. At some point in 2012, the Property was in danger of foreclosure. Because Respondent was unable to refinance the Property in his own name, Decedent agreed to secure a loan to pay off the existing note.

On November 14, 2012, Respondent and Decedent entered into the LEA regarding the Property. The LEA stated in relevant part:

1. Son is the owner of the following land . . . .

_____

[1] As of February 14, 2016, the Property was valued at $415,000.

2. Son is indebted to MCAS Beaufort [Federal Credit Union] in the amount of approximately $65,000.00.

3. Mom is going to secure financing in that amount from Palmetto State Bank to pay off MCAS.

4. Son will deed the title of the property to Mom in order to have a first mortgage on the premises placed . . . in Mom's name.

5. Upon the sale of the premises, the amount of money owed to the bank at that time will be paid along with any taxes, insurance payments, interest or any other items paid for by Mom for the ownership, maintenance and upkeep of the property.

6. Upon the acquisition of the contract of sale of the premises, Mom agrees to deed the premises back to Son so that there will be no capital gains on the sale of the property as Son's primary residence.

The parties simultaneously executed a Deed to Real Estate, transferring the Property's title from Respondent to Decedent "in consideration of the sum of ONE and 00/100ths ($1.00)."  The next day, Decedent executed a promissory note and mortgage on the Property for $65,280.[2]  Thereafter, Respondent continued to occupy the Property, operate his business on the Property, pay all of the mortgage loan payments, and pay expenses related to the Property.  Approximately a year later, on November 15, 2013, Respondent and Decedent cosigned on a second loan to invest in Respondent's deer processing business.

On February 14, 2016, Decedent died with the Property still titled in her name. Decedent's three children, Samuel, Respondent, and Appellant, were appointed as co-personal representatives of her estate on March 4, 2016.  On May 19, 2017, Samuel filed a summons and petition for declaratory relief with the Beaufort County Probate Court.  On May 22, 2017, he amended his petition, asking the court to determine the intent of Decedent when she executed the LEA and enter a judgment

---

[2] Appellant contends the note and mortgage were executed on November 14, 2012, the same day as the deed and LEA.

declaring the rights of the parties involved in the action.[3]  On May 30, 2017, Respondent joined Samuel's declaratory judgment action.  On June 6, 2017, Appellant answered, asserting a counterclaim and cross-claim and demanding a jury trial.  Additionally, Appellant requested to remove the action to the circuit court.  On June 13, 2017, the probate court granted Appellant's motion to remove the action to the circuit court, while retaining exclusive jurisdiction over the administration of the estate and any other formal proceedings pending within the estate.

On September 5, 2017, Appellant filed a motion for summary judgment, claiming she was entitled to judgment as a matter of law because Samuel and Respondent "failed to timely file a claim with the estate and are time barred from asserting a claim against the estate based on contract or tort, or other grounds."  Samuel and Respondent responded by filing their own respective motions for summary judgment.[4]

The hearing on the matter took place on October 9, 2017.  On February 7, 2018, the circuit court issued its order denying Appellant's summary judgment motion and granting Respondent's motion for partial summary judgment, declaring the existence of a resulting trust, and striking Appellant's jury trial demand.  The circuit court denied Appellant's motion for reconsideration as to the merits of the action but granted her request to amend its prior order by including additional findings of fact and conclusions of law.  This appeal followed.

### ISSUES ON APPEAL

1. Did the circuit court err by finding the action was not barred by the nonclaim statute?

2. Did the circuit court err by finding the existence of a resulting trust in Respondent's favor?

3. Did the circuit court err by striking Appellant's request for a jury trial on her breach of fiduciary duty claim?

---

[3] Samuel contended that he and Respondent "believed the [LEA] confirm[ed] Decedent] intended to hold the property in trust for the benefit of [Respondent] and the property, therefore, is not an estate asset subject to distribution through the decedent's estate."

[4] Samuel later withdrew his motion for summary judgment as of September 28, 2017.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "An appellate court reviews the granting of summary judgment under the same standard applied by the [circuit] court pursuant to Rule 56, SCRCP." *In re Est. of Hover*, 407 S.C. 194, 202, 754 S.E.2d 875, 879 (2014) (quoting *Brockbank v. Best Cap. Corp.*, 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000)). Further, "'[q]uestions of statutory interpretation are questions of law, which [appellate courts] are free to decide without any deference to the court below.'" *Id.* (quoting *Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 535, 725 S.E.2d 693, 695 (2012)).

## LAW/ANALYSIS

### I. NONCLAIM STATUTE

Appellant argues the circuit court erred by finding the action was not barred by the nonclaim statute. We disagree.

Section 62-3-803 of the South Carolina Code (2014) states in relevant part:

> All *claims* against a decedent's estate which arose before the death of the decedent . . . founded on contract, tort, or other legal basis . . . are barred against the estate, the personal representative, the decedent's heirs and devisees, and nonprobate transferees of the decedent; unless presented within the earlier of the following:
>
> (1) one year after the decedent's death; or
>
> (2) the time provided by Section 62-3-801(b) for creditors who are given actual notice, and within the time provided in Section 62-3-801(a) for all creditors barred by publication.

(Emphasis added). Section 62-1-201(4) of the South Carolina Code (2014) states that "claims" in respect to estates of decedents and protected persons, "include[] *liabilities* of the decedent or protected person whether arising in contract, in tort, or otherwise, and *liabilities* of the estate which arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and expenses

of administration." (Emphasis added). However, section 62-1-201(4) explicitly excludes the following from the definition of claims: "estate or inheritance taxes, or demands or *disputes regarding title* of a decedent or protected person to *specific assets alleged to be included in the estate*." (Emphases added).

In its order denying Appellant's motion for summary judgment, the circuit court methodically explained why this declaratory judgment action is not barred by the nonclaim statute. Citing the statutory definition of "claims" and how other jurisdictions have handled disputes involving title to real or personal property, the circuit court found the nonclaim statute inapplicable to this property dispute. We agree with the circuit court.

Appellant contends that Decedent had clean title and sole ownership of the Property and that the Property should be included in the estate for distribution to Decedent's heirs. Samuel and Respondent dispute this fact, arguing there is a trust in Respondent's favor in the Property and that the Property should not be included in the estate. Because this is a dispute regarding title to this specific asset, we find this action does not fall within the definition of "claims" under section 62-1-201(4). *See Matter of Howard*, 315 S.C. 356, 364 n.8, 434 S.E.2d 254, 259 n.8 (1993) (finding a dispute over title to a gun was not a claim for purposes of the nonclaim statute); *id.* ("The definition of 'claims' in the Probate Code expressly excludes disputes regarding title of a decedent to specific assets alleged to be included in the estate."); *see also Wadsworth v. Hannah*, 431 So. 2d 1186, 1188–89 (Ala. 1983) (finding an action seeking title to specific parcels of real estate promised to the respondents by the decedent, and for which the respondents had performed valuable services as consideration, was not barred by Alabama's nonclaim statute); *Matter of Estate of Powers*, 552 N.W.2d 785, 787 (N.D. 1996) (finding North Dakota's nonclaim statute was not applicable to a dispute involving title to a vehicle asserted by virtue of joint tenancy interest).

Furthermore, we agree with the circuit court that actions for specific assets are not barred because they are not actions or liabilities against Decedent's estate, but disputes over ownership of specific assets in the hands of the personal representative(s). *See* S.C. Code Ann. § 62-1-201(4) ("'Claims', in respect to estates of decedents and protected persons, includes *liabilities* of the decedent or protected person whether arising in contract, in tort, or otherwise, and *liabilities* of the estate which arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and expenses of administration." (emphases added)); *Saradjian v. Saradjian*, 595 A.2d 890, 893–94 (Conn. App. 1991) (finding Connecticut's nonclaim statute was inapplicable to a claim involving the existence of a resulting trust); *id.* ("A claim for specific property in the hands of the [executor]

is deemed to be a claim 'against the [executor]' but not 'against the estate'; for such property, though in the hands of the [executor], is not part of the estate and the claim for it is not a 'debt' of the estate." (alterations in original) (quoting *Breen v. Phelps*, 439 A.2d 1066, 1077 (1982))); *Cornelius v. Miller*, 836 So. 2d 883, 884 (Ala. Civ. App. 2002) ("The long-standing rule that claims of title do not fall under the nonclaim statute is based on the principle that claims of title are not claims against the estate."). Here, the declaratory judgment action seeks to clarify the rights of all interested parties to a specific asset that Appellant purports is a part of the estate. It is not an action seeking to recover a debt for the estate's "liabilities." *See* § 62-1-201(4); *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007) ("The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature. When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." (citation omitted)). Accordingly, we find the circuit court did not err by finding the action was not barred by the nonclaim statute.

## II.  TRUST

The circuit court found that there is a resulting trust in the Property for Respondent's benefit. We agree.

"Equity devised the theory of resulting trust to effectuate the intent of the parties in certain situations where one party pays for property, in whole or in part, that for a different reason is titled in the name of another." *McDowell v. S.C. Dep't of Soc. Servs.*, 296 S.C. 89, 92, 370 S.E.2d 878, 880 (Ct. App. 1987). "The general rule is[,] when property is conveyed to one person and the consideration for that property is paid by another, it is presumed the party who pays the purchase money intended to benefit himself and a resulting trust is raised in his behalf." *Id.* "The presumption, however, may not be in accord with the truth . . . [and] may be rebutted and the actual intention shown by parol evidence." *Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 249, 489 S.E.2d 472, 475 (1997).[5]

---

[5] In *Bailey*, the credit union argued that a father was not entitled to the presumption of a resulting trust, because he deeded the property to his son. 327 S.C. at 249, 489 S.E.2d at 475–76 ("[W]hen the conveyance is taken to a spouse or child, or to any other person for whom the purchaser is under legal obligation to provide, no such presumption attaches. On the contrary, the presumption in such a case is that the purchase was designated as a gift or advancement to the person to whom the conveyance is made."). Our supreme court found that the father presented clear and

In *Campbell v. Campbell*, this court found that an uncle (Uncle) proved the existence of a resulting trust against his nephew (Nephew) in circumstances mirroring the current matter. 300 S.C. 68, 386 S.E.2d 305 (Ct. App. 1989). In *Campbell*, Nephew and his wife purchased a house for the purpose of providing a home to Uncle and Uncle's wife. *Id.* at 69, 386 S.E.2d at 305. The consideration for the home was $7,500, with a $2,000 down payment. *Id.* Each couple paid one-half of the down payment, and Nephew and his wife obtained a loan for the remainder of the purchase price, because Uncle and Uncle's wife could not obtain one. *Id.* at 69–70, 386 S.E.2d at 306. Uncle and Uncle's wife made all of the monthly payments—save for two—until the mortgage was satisfied. *Id.* at 69, 386 S.E.2d at 305–06. They also paid the yearly insurance premiums except for two years' worth. *Id.*

The dispute over ownership of the property arose after the mortgage was paid and Nephew refused to transfer the title to Uncle. *Id.* at 70, 386 S.E.2d at 306. Uncle testified that the agreement was that he and his wife were to make all the payments on the house and if they lived long enough to pay off the mortgage, Nephew and Nephew's wife would give them full title to the house. *Id.* at 69, 386 S.E.2d at 306. Nephew and Nephew's wife testified, however, that the agreement was that Uncle and Uncle's wife would only receive a life estate. *Id.* The master-in-equity concluded that Nephew's testimony concerning the life estate was unreasonable and "highly unlikely" and concluded that Uncle had proven a resulting trust in the property. *Id.* at 70, 386 S.E.2d at 306. On appeal, this court affirmed the masters's finding of a resulting trust, concluding that "at the time the property was purchased[, Uncle and Uncle's wife] paid for, or obligated themselves to pay for[,] most of the

---

convincing evidence that the conveyance to his son was not intended as a gift, but rather the father intended to benefit himself. *Id.* at 249, 489 S.E.2d at 476.

> [The f]ather handled the entire transaction in purchasing the property. He dealt directly with the real estate agent and the closing attorney. He occupied the house after the purchase. He paid the insurance and the taxes on the property. [The s]on just showed up for the closing. There was no evidence [the s]on actually occupied the premises or that he ever helped [the f]ather financially or physically with the house.

*Id.* at 249–50, 489 S.E.2d at 476. The court held that this was sufficient to rebut the presumption of a gift, but due to the father's attempt to defraud creditors and his wife a resulting trust was not established. *Id.* at 250, 489 S.E.2d at 476.

purchase price of the property, thus, creating a resulting trust to the extent they paid or obligated themselves to pay for the property." *Id.* at 71, 386 S.E.2d at 306. The court found that the situation equated to a loan from Nephew and Nephew's wife to Uncle and Uncle's wife to pay a portion of the home's purchase price. *Id.* ("Where a transfer of property is made to one person and the purchase price is advanced by him as a loan to another, a resulting trust arises in favor of the latter, but the transferee can hold the property as security for the loan." (quoting *Restatement (Second) of Trusts* § 448)).

The evidence in the current matter makes clear that Decedent and Respondent intended that Respondent would retain ownership of the property, and a resulting trust was formed. First, the LEA states unequivocally that Respondent is the owner of the Property and the Property was deeded to Decedent in order to secure a "first mortgage" on the property. *See McDowell*, 296 S.C. at 92, 370 S.E.2d at 880 ("Equity devised the theory of resulting trust to effectuate the intent of the parties in certain situations where one party pays for property, in whole or in part, that for a different reason is titled in the name of another."); *Bailey*, 327 S.C. at 249, 489 S.E.2d at 476 (finding that a father's conveyance of a home's title to his son was meant to benefit the father and the father rebutted the gift presumption by showing he handled the purchasing transactions and paid for the home himself, resided in the home without the son, and paid the home's taxes and insurance). Next, the uncontroverted evidence shows, like the nephew in *Campbell*, Decedent secured a loan for Respondent's benefit because Respondent could not obtain the loan on his own. The sole purpose of the loan was to prevent the Property from foreclosure, not to benefit Decedent.

Further, Respondent has occupied the Property continuously, operated a deer meat processing business on the Property, and made all mortgage payments on the Property since 1993. Appellant has failed to present a plausible argument as to why Respondent would give away his interest in the Property for one dollar and has, thus, failed to rebut the presumption of a resulting trust. *See McDowell*, 296 S.C. at 92, 370 S.E.2d at 880 ("The general rule is[,] when property is conveyed to one person and the consideration for that property is paid by another, it is presumed the party who pays the purchase money intended to benefit himself and a resulting trust is raised in his behalf."); *Bailey*, 327 S.C. at 249, 489 S.E.2d at 475 ("The presumption, however, may not be in accord with the truth . . . [and] may be rebutted and the actual intention shown by parol evidence."); *see also Campbell*, 300 S.C. at 71, 386 S.E.2d at 306 ("[A]t the time the property was purchased[, Uncle and Uncle's wife] paid for, or obligated themselves to pay for[,] most of the purchase price of the property, thus, creating a resulting trust to the extent they paid or obligated themselves to pay

for the property."). Accordingly, we find there is no genuine issue of material fact and a resulting trust existed as a matter of law.

## III. JURY TRIAL

The circuit court struck Appellant's request for a jury trial, finding her counterclaims and cross-claims permissive. We agree with the circuit court.

Appellant filed her answer, counterclaim, and cross-claim on June 6, 2017. She asserted a claim of breach of fiduciary duty to the estate by Samuel and Respondent and demanded a jury trial. On June 27, 2017, Respondent filed cross-claims alleging Appellant breached her fiduciary duty to the estate. Further, in his memorandum in opposition to Appellant's summary judgment motion and in support of his motion for partial summary judgment, Respondent asked the court to strike Appellant's "request for a jury trial on the basis that the complaint is equitable and her counterclaims are legal and permissive." Following the circuit court's ruling, Appellant asked the court to reconsider her "request for a jury trial on the counterclaims [she] raised in her answer." Appellant further stated that her breach of contract cross-claim also entitled her to a jury trial. At no point did she argue she was entitled to a jury trial based on Respondent's breach of fiduciary duty claim against her.

"Generally, the relevant question in determining the right to trial by jury is whether an action is legal or equitable; there is no right to trial by jury for equitable actions." *Bateman v. Rouse*, 358 S.C. 667, 673, 596 S.E.2d 386, 389 (Ct. App. 2004) (quoting *Lester v. Dawson*, 327 S.C. 263, 267, 491 S.E.2d 240, 242 (1997)). "Actions to determine resulting trusts sound in equity." *Jocoy v. Jocoy*, 349 S.C. 441, 444, 562 S.E.2d 674, 675 (Ct. App. 2002). "[A] defendant in an equity action, such as a mortgage foreclosure, has a right to a jury trial on a counterclaim that is legal and compulsory in character." *N. Carolina Fed. Sav. & Loan Ass'n v. DAV Corp.*, 294 S.C. 27, 30, 362 S.E.2d 308, 310 (Ct. App. 1987), *aff'd in part, rev'd in part*, 298 S.C. 514, 381 S.E.2d 903 (1989). "But where a defendant in an action begun in equity asserts a permissive counterclaim that is legal in nature, the defendant is deemed to have waived the right to a jury trial on the issues raised by the counterclaim." *Id.*

To the extent that Appellant argues she is entitled to a jury trial because Respondent filed a cross-claim asserting the same claim against her that she previously asserted against Respondent and Samuel, that argument is not preserved for appellate review. *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal,

but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). Regarding her claims against Respondent, "[g]enerally, cross-claims are permissive." *N. Carolina Fed. Sav. & Loan Ass'n*, 298 S.C. at 519, 381 S.E.2d at 906. Further, a claim of breach of fiduciary duty to the estate is permissive in a declaratory judgment action regarding a resulting trust because there is no logical relationship between the two. *See id.* at 518, 381 S.E.2d at 905 (stating the logical relationship test is used to determine whether counterclaims asserted in an equity action are compulsory in nature). Accordingly, we find the circuit court did not err by striking Appellant's jury trial demand.

## CONCLUSION

Based on the foregoing, the circuit court's order is

**AFFIRMED.**

**KONDUROS, GEATHERS, and MCDONALD, JJ., concur.**